## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS
LIABILITY LITIGATION

This Document Relates to:
*Estes*, 7:20cv137

Case No. 3:19md2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

### <u>ORDER</u>

This matter is before the Court on Defendants' motion for summary judgment, ECF No. 26. On full consideration, the motion is **GRANTED in part** and **DENIED in part**.

## I. Legal Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex*, 477 U.S. at

323. In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *Liberty Lobby*, 477 U.S. at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).

## II. Background

The Court assumes the parties' familiarity with the general factual allegations and nature of this multidistrict litigation. Plaintiffs, Luke Estes and his wife, Jennifer Estes, raise sixteen claims under Georgia law[1] against Defendants arising from injuries the Estes allege were caused by Mr. Estes' use of 3M's Combat Arms Earplug ("CAEv2") during his military service. *See* Am. Master Short Form Compl., ECF No. 12-1.[2] Defendants raise several affirmative defenses, including that the Estes' claims are time barred. *See* ECF No. 14 at pp. 3–9, ¶ 8.

## III. Discussion

Defendants argue that all of the Estes' claims fail because they are barred by the applicable statutes of limitations and because they cannot prove that a defect in

---

[1] The parties agree that Georgia law governs the Estes' claims.

[2] Specifically, Mr. Estes raises claims for Design Defect – Negligence (Count I), Design Defect – Strict Liability (Count II), Failure to Warn – Negligence (Count III), Failure to Warn – Strict Liability (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count VI), Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), Fraud and Deceit (Count X), Gross Negligence (Count XI), Negligence Per Se (Count XII), Consumer Fraud and/or Unfair Trade (Count XIII), Unjust Enrichment (Count XV), and Punitive Damages (Count XVI). Mrs. Estes raises a claim for Loss of Consortium (Count XIV).

the CAEv2 caused Mr. Estes' injuries. Additionally, Defendants argue that Mr. Estes' claims for breach of warranty, misrepresentation, fraud and deceit, fraudulent concealment, negligence per se, unfair trade, and unjust enrichment each fail for other reasons as a matter of law.

1. Disputed issues of material fact preclude summary judgment as to whether the Estes' claims are untimely

*(a) Mr. Estes' claims*

The applicable limitations period for Mr. Estes' personal injury claims is two years. O.C.G.A. § 9-3-33. The applicable limitations period for Mr. Estes' fraud and unfair trade claims is four years. O.C.G.A. § 9-3-31; *see Reaugh v. Inner Harbour Hosp., Ltd.*, 447 S.E.2d 617, 619 (Ga. Ct. App. 1994); *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1205 (11th Cir. 1997). By agreement of the parties, the Estes' claims are deemed to have been filed as of June 20, 2019. Therefore, Mr. Estes' personal injury claims are timely if they accrued after June 20, 2017, and his fraud and unfair trade claims are timely if they accrued after June 20, 2015.[3]

---

[3] Neither party addresses the potential impact of the Servicemembers' Civil Relief Act ("SCRA"), which excludes Mr. Estes' period of military service from the computation of "any period limited by law . . . for the bringing of any action of proceeding in a court." *See* 50 U.S.C. § 3936(a); *DeTemple v. Leico Geosystems, Inc.*, 576 F. App'x 889, 892 (11th Cir. 2014) ("The SCRA's tolling command is 'unambiguous, unequivocal, and unlimited.' " (quoting *Conroy v. Aniskoff*, 507 U.S. 511, 513–14 (1993)); *see also Ross v. Waters*, 774 S.E.2d 195, 196 (Ga. Ct. App. 2015) (noting that the trial court "found that the plain and unambiguous text of . . . the SCRA tolled [Georgia's] five-year statute of repose for medical malpractice suits"). Mr. Estes' military service ended on May 26, 2017. *See* Luke Estes Depo. Tr. at 103:1–14. Assuming the SCRA tolled

Defendants argue that Mr. Estes' claims are untimely because they accrued in 2014. In support, Defendants cite Mr. Estes' deposition testimony that he has a "vivid" recollection of experiencing problems with the CAEv2 one day in 2014 when he was working on an M4 firing range. *See* Luke Estes Depo. Tr. at 194:21– 24. Mr. Estes testified that he "recollect[s] the entire day just having to . . . push the earplug back . . . as it felt like it was getting loose . . . . with great frequency." *See id.* at 195:3–24. He further testified that he "believed [that] there was an increase in sound" on that day due to the CAEv2 loosening in his ear and that "pushing it back in would help alleviate that issue." *See id.* at 202:3–15. Mr. Estes additionally testified that he "ha[s] a recollection . . . of a serious issue with tinnitus after that range [incident] in 2014" and that he now "believe[s] there's a connection" between that day at the range and his partial hearing loss in his left ear. *See id.* at 255:12–14, 257:3.

"Georgia law is clear that the statute of limitations for a personal injury claim 'begins to run at the time damage caused by a tortious act occurs.' " *Atchison v. Bd. of Regents of Univ. Sys. of Ga.*, 802 F. App'x 495, 507 (11th Cir. 2020) (quoting *Everhart v. Rich's, Inc.*, 194 S.E.2d 425, 428 (Ga. 1972)). However, in cases involving " 'continuing torts,' where the plaintiff's injury developed from prolonged

---

the four-year limitations period until May 26, 2017, Mr. Estes' fraud and unfair trade claims would be timely as a matter of law. The Court declines to decide the issue at this stage. The parties should, however, be prepared to address the issue before trial.

exposure to the defendant's tortious conduct," the "discovery rule" applies to toll the statute of limitations. *See M.H.D. v. Westminster Schs.*, 172 F.3d 797, 804 (11th Cir. 1999) (citing *King v. Seitzingers, Inc.*, 287 S.E.2d 252, 255 (Ga. 1981)); *Collett v. Olympus Optical Co.*, No. 3:18-CV-66, 2018 WL 6517442, at *4 (M.D. Ga. Dec. 11, 2018) ("[T]he discovery rule is intended to apply in cases . . . where there is a problem fixing the specific date of a bodily injury that develops over time after the event that caused the injury occurs."). Under the discovery rule, the statute of limitations does not begin to run until the plaintiff "knows (or reasonably should know)" two distinct facts: " 'the nature of his injury . . . [*and*] the causal connection between the injury and *the alleged negligent conduct of* [the defendant].' " *M.H.D.*, 172 F.3d at 804; *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992) (emphasis added) (quoting *King*, 287 S.E.2d at 255); *see Ballew v. A.H. Robins Co.*, 688 F.2d 1325, 1327 (11th Cir. 1982) ("The Georgia courts have held that in the instance of a continuing tort . . . . a cause of action [does not] accrue until the plaintiff knew or through the exercise of reasonable diligence should have discovered the causal connection between the injury *and the alleged negligent conduct of the defendant*." (emphasis added)); *see also Rogers v. Mentor Corp.*, 682 F. App'x 701, 710–711 (11th Cir. 2017) ("If we were to disregard the word 'causal' in the discovery rule, it would mean that anytime one uses a product and has injuries near in time, you should sue or lose your claim. This would lead to pointless litigation

and scores of unripe claims.").[4] Whether a plaintiff "should, through the exercise of reasonable diligence, have discovered the causal connection between [her] illnesses and the alleged negligence of a defendant is an issue for jury determination." *Norby v. Ethicon Inc.*, No. 1:20-CV-323, 2020 WL 3400182, at *3 (N.D. Ga. Apr. 17, 2020) (quoting *Andel v. Getz Servs., Inc.*, 399 S.E.2d 226, 228 (Ga. Ct. App. 1990)).

The Eleventh Circuit's application of Georgia law in *Welch* and *Ballew* is instructive. In *Welch*, the plaintiff brought a products liability suit against the manufacturers and distributors of asbestos-containing products. 951 F.2d at 1236. The district court granted summary judgment on statute of limitations grounds, finding that the plaintiff's filing of a workers' compensation claim alleging asbestosis more than two years before the filing of his products liability lawsuit started the running of the limitations period. *See id.* On appeal, the Eleventh Circuit reversed and held that, even assuming that the plaintiff's workers' compensation claim established that the plaintiff knew that asbestos was the cause of his injury, the record lacked sufficient evidence of the plaintiff's "knowledge of the conduct of the manufacturers or distributors" to establish that the plaintiff "knew or had reason

---

[4] Some intermediate Georgia appellate courts have described the level of knowledge required to start the running of the statute of limitations as when a plaintiff "*suspected* that their alleged injuries *may have been caused* by [a] [defendants'] conduct." *See Harrison v. Beckham*, 518 S.E.2d. 435, 200 (Ga. Ct. App. 1999) (emphasis in original) (quoting *Thomason v. Gold Kist*, 407 S.E.2d 472 (Ga. Ct. App. 1991)). To the extent this "suspected" standard represents a lower level of knowledge than the "reasonably should know" standard, the Court is bound by the Eleventh Circuit's interpretation of Georgia law and will apply the "reasonably should know" standard as articulated in *M.H.D*, *Welch*, and *Ballew*.

to know of the causal connection between the injury and the alleged negligent conduct" until he met with an attorney less than two years before he filed suit. *See id.* at 1237–38.

In *Ballew*, the plaintiff brought personal injury claims against the manufacturer of an intrauterine device known as "Dalkon Shield."  688 F.2d at 1326. More than two years before she filed suit, the plaintiff's physician had removed the Dalkon Shield, diagnosed the plaintiff as having a pelvic infection and tubo-ovarian abscess, and had her admitted to a hospital for treatment. *Id.* During the plaintiff's hospitalization, she "specifically asked her attending physicians whether the Shield caused the infection" and was told that they could not determine whether the Dalkon Shield was causally related to her infection. *Id.* Months later, within the two-year limitations period, the plaintiff read a newspaper article about a lawsuit filed against the manufacturer for injuries allegedly sustained as a result of the Dalkon Shield. *Id.* She contacted the plaintiffs involved in that litigation and was advised by their attorney "that she might have a cause of action" against the manufacturer. *Id.* at 1327. As a result, the plaintiff filed suit. *Id.*

The district court granted summary judgment for the defendant, finding that the plaintiff's hospitalization started the running of the limitations period. *Id.*  On appeal, the Eleventh Circuit reversed. The court reasoned that although the circumstances surrounding the plaintiff's hospitalization "could support a finding

that [the plaintiff] knew or with reasonable diligence should have discovered the causal relationship between her injuries and the Dalkon Shield," other evidence, including her efforts in pursuing the newspaper article, created "a genuine issue of material fact as to when the [plaintiff] knew or with reasonable diligence should have discovered the causal relationship between her injuries and [the manufacturer's] alleged misconduct." *Id.* at 1328.

Defendants argue that the discovery rule does not apply to Mr. Estes' claims. According to Defendants, Mr. Estes' injuries do not involve a continuing tort because he "can pinpoint a *specific day* in which his injuries developed" at the range in 2014. The Court disagrees. The unrefuted expert testimony in this case is that, while Mr. Estes can identify the date he first subjectively perceived his injuries, his injuries actually developed over an extended period of time. For example, Dr. Christopher Spankovich testified at his deposition that "there is a continued progression of this, and that's because . . . this is not a single event that caused this hearing loss. This was more likely related to repeated exposures over time that he incurred." Dr. Spankovich Depo. Tr. at 227:15–19; *see also id.* at 31:14–22 ("[T]his single event . . . is simply when he reports the onset of a perceived change in hearing and onset of his tinnitus. Prior to his exposure events while he was shooting, post exposure events where he was shooting could also have contributed while he was wearing his [CAEv2]."). And as Dr. Mark Packer opined in his report, while "Mr.

Estes' loss manifest subjectively in 2014 . . . . It is also more likely than not that Mr.
Estes was not getting consistent protection from the CAEv2 and therefore [was]
sustaining subclinical injury" when using the CAEv2 during episodes of dangerous
noise. *See* Dr. Packer Report at 20; *see also id.* at 22 ("Mr. Estes . . . wore [the
CAEv2] extensively which exposed to him to numerous episodes of dangerous noise
that is the etiology of his hearing loss."); Dr. Packer Depo. Tr. at 453:18–21 ("It
wasn't just one occasion . . . . [Mr. Estes] has symptoms that are consistent with a
temporary threshold shift on that day, but I think he was underprotected for much of
the time while he wore these plugs."). Moreover, Dr. Packer opined that Mr. Estes'
hearing loss "will continue to worsen (and has worsened) over time" and Dr.
Spankovich opined that Mr. Estes' 2015 and 2016 audiograms showed "progressive
deterioration of hearing." Dr. Packer Report at 22; Dr. Spankovich Report at 6.
Based on this expert testimony, the Court finds as a matter of law that Mr. Estes'
alleged hearing injuries involve a continuing tort and that the discovery rule
therefore applies. *Cf. Everhart*, 194 S.E.2d at 428 (describing "loss of hearing" as a
disease presenting "practical problems in fixing a specific date of injury") (citing
*Shipman v. Emps. Mut. Liab. Ins. Co.*, 125 S.E.2d 72 (Ga. Ct. App. 1962)); *Shipman*,
125 S.E.2d at 73–74  (in context of workmen's compensation claim for hearing loss,
stating that "[t]he medical testimony here indicated that each time an engine was run
on the flight line a traumatic reaction occurred in claimant's ear"); *Collett*, 2018 WL

6517442, at *3–4 (on a motion to dismiss, finding plaintiff's allegations that he developed HIV "weeks or months" after a colonoscopy "clearly involves a bodily injury that developed 'only over an extended period of time' " and distinguishing "immediate injury" cases involving slip and falls, sexual abuse, immediate illness after ingestion of a product, and a rifle discharge).

Defendants next argue that Mr. Estes' claims are time-barred even if the discovery rule applies because the limitations period began to run when he ceased using the CAEv2 in 2015. Again, the Court disagrees. As in *Ballew*, where the limitations period did not begin to run when the plaintiff ceased using the Dalkon Shield more than two years before filing suit, the limitations period did not begin to run when Mr. Estes ceased using the CAEv2. *Cf. Ballew*, 688 F.2d at 1326–27. Instead, the limitations period on Mr. Estes' claims began to run when he knew, or with reasonable diligence should have discovered, the causal relationship between his injuries and Defendants' alleged misconduct. Based on the record evidence, the Court finds that, as in *Welch* and *Ballew*, there is a genuinely disputed issue of material fact as to this issue. *Cf. Welch*, 951 F.2d at 1238; *Ballew*, 688 F.2d at 1328. While the circumstances surrounding Mr. Estes' experience on the M4 firing range in 2014 could support a finding that he knew or with reasonable diligence should have discovered that his symptoms had something to do with the CAEv2, the evidence is equally susceptible of showing that he neither knew nor should have

known that his alleged injuries were caused by Defendants' alleged wrongful conduct until a relative brought the litigation surrounding CAEv2 to his attention in 2019. *See* Luke Estes Depo. Tr. at 297:2–302:7; *cf. Ballew*, 688 F.2d at 1328; *Welch*, 951 F.2d at 1237–38; *see also In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1379–80 (M.D. Ga. 2010) (applying Georgia's discovery rule and finding that although the plaintiffs manifested injuries more than two years prior to filing suit, there was evidence that they were unaware that an alleged defect in ObTape caused their injuries until they read articles about product liability suits regarding the product). Accordingly, Defendants' motion for summary judgment on this basis is denied.[5]

*(b) Mrs. Estes' Claim*

For similar reasons, there is a fact question as to when Mrs. Estes' loss of consortium claim accrued. The applicable statute of limitations is four years. *See* O.C.G.A. § 9-3-33. Accordingly, Mrs. Estes' claim is timely if her claim accrued after June 20, 2015. Defendants argue that Mrs. Estes' claim accrued in January 2015, at the latest, because that is when she testified that Mr. Estes first complained to her about his hearing loss. *See* Jennifer Estes Depo. Tr. at 117:23–118:1; 127:24–128:1. But, as previously explained with respect to Mr. Estes' claims, a disputed

---

[5] Because the Court finds that Defendants' motion for summary judgment based on the statute of limitations is due to be denied on this basis, the Court need not, and does not, decide whether the applicable limitations periods were tolled by Defendants' alleged fraud.

issue of fact exists as to when Mrs. Estes knew or should have known that her injuries *were caused by Defendants' wrongful conduct. Cf. Welch*, 951 F.2d at 1238; *Ballew*, 688 F.2d at 1328. Accordingly, Defendants' motion for summary judgment on Mrs. Estes' loss of consortium claim is denied.

## 2. Disputed issues of material fact preclude summary judgment as to whether a defect in the CAEv2 caused Mr. Estes' alleged injuries

To prevail on their claims, the Estes must prove that Defendants' conduct was the proximate cause of Mr. Estes' injuries. *See Moore v. Intuitive Surgical, Inc.*, No. 1:15-CV-056, 2019 WL 10784535, at *5 (M.D. Ga. Jan. 30, 2019). "Under Georgia law, medical causation must be proven to a reasonable degree of medical certainty and requires a showing of general and specific causation." *Nix v. Ethicon, Inc.*, No. 1:19-cv-4896, 2020 WL 5525172, at *3 (N.D. Ga. Sept. 14, 2020). While "expert evidence typically is not required to prove causation in a simple negligence case," expert testimony is required in cases involving "specialized medical questions," where "truly *specialized* medical knowledge (rather than the sort of medical knowledge that is within common understanding and experience) is needed to establish a causal link between the defendant's conduct and the plaintiff's injury." *Cowart v. Widener*, 697 S.E.2d 779, 781, 786 (Ga. 2010).

An expert must "state an opinion regarding proximate cause in terms stronger than medical possibility, i.e., reasonable medical probability or reasonable certainty." *See Silverstein v. Procter & Gamble Mfg. Co.*, 700 F. Supp. 2d 1312,

1317 (S.D. Ga. 2009) (quoting *Ambling Mgmt. Co. v. Purdy*, 640 S.E.2d 620, 627 (Ga. Ct. App. 2006)). "Where a plaintiff's medical expert cannot testify to a reasonable degree of medical certainty that a defendant caused the injury, that expert 'may be aided by other medical or non-medical evidence that, in totality, shows causation, even though the medical opinion is weak, i.e., showing a reasonable possibility rather than a probability." *Moore*, 2019 WL 10784535, at *5 (quoting *Estate of Patterson v. Fulton-DeKalb Hosp. Auth.*, 505 S.E.2d 232, 235 (Ga. Ct. App. 1998)); *see Rodrigues v. Ga.-Pac. Corp.*, 661 S.E.2d 141, 143 (Ga. Ct. App. 2008) ("[M]edical testimony stated only in terms of a 'possible' cause *may* be sufficient when supplemented by probative non[-]expert testimony on causation."). "Questions regarding proximate cause are undeniably [for] jury [resolution] and may only be determined by the courts in plain and undisputed cases." *Suzuki Motor of Am., Inc. v. Johns*, 830 S.E.2d 549, 556 (Ga. Ct. App. 2019) (quoting *Tensar Earth Techs v. City of Atlanta*, 598 S.E.2d 815, 820 (Ga. Ct. App. 2004)). Accordingly, the Estes must produce expert evidence that, considered together with non-expert evidence, would allow a reasonable jury to find, to a reasonable degree of medical probability or certainty, both that (1) the CAEv2 had defects that could have caused Mr. Estes' injuries, and (2) that one or more of those defects did in fact cause his injuries. *See Moore*, 2019 WL 10784535, at *5.

Defendants argue that the Estes have failed to offer sufficient expert testimony of specific causation.[6] According to Defendants, the Estes have not "put forward *any* expert testimony concluding that the alleged fitting issues with the CAEv2 actually prevented [Mr. Estes] from getting a good fit." In support, Defendants point to Dr. Packer's deposition testimony that "it would be nearly impossible to know" whether the CAEv2 fit Mr. Estes without "performing a personal attenuation rating with him."[7] *See* Dr. Packer Depo Tr. at 450:5–8.

Notwithstanding this testimony, the Estes have produced sufficient expert testimony to raise a triable issue of fact as to whether a design defect in CAEv2 caused Mr. Estes' injuries.[8]  First, the Estes' experts opine that the CAEv2 was defectively designed and that its design defects present an unreasonable risk of auditory injury to users. *See, e.g.*, Dr. David A. Eddins Report at 2–3; Richard L.

---

[6] To the extent Defendants argue that the Estes have failed to offer adequate expert testimony of general causation, the argument is without merit. *See, e.g.*, Dr. David A. Eddins Depo. Tr. at 69:18–70:3 ("I would offer the opinion that the [CAEv2] . . . will not properly fit anyone.").

[7] As a threshold finding, Defendants should have raised this argument in their *Daubert* challenges to Dr. Packer's and Dr. Spankovich's specific-causation opinions, which they did not. *See Solis v. Tyson Foods, Inc.*, No. 2:02-CV-1174, 2009 WL 10687775, at *6 (N.D. Ala. Sept. 11, 2009) ("A *Daubert* motion can, under certain circumstances, be untimely, and a district court may properly refuse to consider such an untimely evidentiary challenge without running afoul of its obligation to act as a 'gatekeeper.' "); *Largan Precision Co., Ltd. v. Samsung Elecs. Co., Ltd.*, No. 13cv2740, 2015 WL 11251758, at *4 (S.D. Cal. Nov. 30, 2015) ("[T]his dispute may be resolved by way of a motion for summary judgment, but should have been raised in a *Daubert* motion where the parties could have briefed the relevant factors for determining the reliability of Dr. Sasian's testimony.").

[8] Defendants have filed an omnibus *Daubert* motion that includes a challenge to the Estes' specific-causation expert opinions. This Order presumes that portion of Defendants' motion will be denied.

McKinley Report at 5–9. Relying on that testimony, which is entirely permissible, *see Sofillas v. Carnival Corp.*, No. 14-23920, 2016 WL 5407889, at *4–5 (S.D. Fla. July 8, 2016), Dr. Packer and Dr. Spankovich opine that, "to a reasonable degree of medical and scientific certainty," "the injuries and hearing loss suffered by Mr. Estes were caused by the lack of hearing protection provided by the defectively designed CAEv2." Dr. Packer Report at 14; *see* Dr. Spankovich  Report at 14 ("[T]he CAEv2's failure to provide proper hearing protection was the primary cause and the most likely significant contributing factor to Mr. Estes' hearing loss and tinnitus."). Indeed, Dr. Packer opines that "[t]he decreased hearing protection from the defective design of the CAEv2 directly caused Mr. Estes' left sensorineural hearing loss and bilateral tinnitus." Dr. Packer Report at 20; *see also id.* at 22 ("I conclude that the CAEv2 is the cause of the symptoms and injuries Mr. Estes has endured and is currently still suffering.").  While he did not perform a "personal attenuation rating" with Mr. Estes, Dr. Packer did evaluate Mr. Estes' ear anatomy both with and without the CAEv2 inserted to assess whether he could obtain a proper fit with the device.  *See* Dr. Packer Depo. Tr. at 443:21–25, 444:7–17, 444:23–445:2, 447:9–450:1, 452:8–24 (testifying that he used a "binocular microscopy" to observe "a bend" in Mr. Estes' ear canal which he "could see [] a stiff stem not accommodating" and that he also observed that the CAEv2's outer flange contacted Mr. Estes' tragus and that other flanges contacted Mr. Estes' conchal bowl which "could cause . . .

imperceptible loosening and poor fit"). Moreover, Dr. Packer explained that a personal attenuation rating and/or imaging of Mr. Estes' ear canal was not necessary for his differential etiology opinion. *See id.* at 20–22; Dr. Packer Depo Tr. at 452:3–453:3 (explaining that he did not image or measure Mr. Estes' ear canal because "[t]hat is not standard practice"). The Court agrees. *See In re Zoloft*, 858 F.3d 787, 795 (3d Cir. 2017) ("[W]e d[o] not require the expert to run specific tests . . . in order for the differential diagnosis to be reliable. . . .").

Based on Dr. Packer's and Dr. Spankovich's expert testimony, which the Court presumes is reliable, the Court cannot say that the evidence regarding causation is so "plain and undisputed" as to warrant summary judgment for Defendants. Defendants' motion on this basis is therefore denied.

3. Partial summary judgment is warranted on certain claims raised by Mr. Estes

*a. Counts IV and V — Breach of express and implied warranties*

Defendants argue that Mr. Estes' breach of warranty claims fail for lack of privity. Defendants are correct that Georgia law generally precludes the ultimate consumer from recovering on any express or implied warranty against a manufacturer when that ultimate consumer lacks privity with the manufacturer. *See Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 809–10 (11th Cir. 2005). Importantly, however, "[t]here is an exception to this rule: if a manufacturer extends an express warranty to the ultimate consumer, the privity requirement is met even if the ultimate

consumer received the product through an intermediate seller." *Frey v. Bayer Corp.*,
No. 3:20-CV-41, --- F. Supp. 3d ----, 2020 WL 5995587, at *6 (M.D. Ga. Oct. 9,
2020); *see Morgan v. Dick's Sporting Goods, Inc.*, 359 F. Supp. 3d 1283, 1292 (N.D.
Ga. 2019); *Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, 1326–27 (M.D. Ga. 2011); *see
also Gibson v. First Quality Baby Prods., LLC*, No. 4:17-CV-208, 2017 WL
8950391, at *2 (N.D. Ga. Dec. 6, 2017) ("Generally, the law does not bridge the gap
between the manufacturer and ultimate purchasers by implying warranties, but it
throws up no barrier preventing a manufacturer from itself bridging the gap."
(quoting *Studebaker Corp. v. Nail*, 62 S.E.2d 198, 202 (Ga. 1950))).[9]

There is record evidence that Defendants made express warranties regarding
the safety and efficacy of the CAEv2 to ultimate users, including Mr. Estes. *See,
e.g.*, Pls.' Resp. Exs. 22–25; D. Garrad Warren Depo. Tr. at 133:4–24, 138:16–
139:14; Luke Estes Depo. Tr. at 186:17–187:23 (testifying that he recalls seeing a

---

[9] Federal courts in Georgia are in conflict as to whether this exception to the general rule
applies to claims for breach of implied warranties. *Compare Lee*, 806 F. Supp. 2d at 1327–28
("Because privity is established by the alleged express warranty . . . the Plaintiff also may bring
claims for the implied warranties of merchantability and fitness for a particular purpose."), *and
Meyerhoff v. Enhancement Med., LLC*, No. 2:15-CV-78, 2016 WL 4238643, at *5 (N.D. Ga. Feb.
10, 2016) (denying motion to dismiss the plaintiff's claim for breach of implied warranty because
the plaintiff alleged that the manufacturer made an express warranty regarding the safety and
efficacy of the product), *with Morgan*, 359 F. Supp. 3d at 1292 (dismissing claim for breach of
implied warranty because "there are no exceptions" to the general rule requiring privity to sustain
a claim for breach of implied warranty). The Court finds *Lee* and *Meyerhoff* more persuasive on
Georgia law than *Morgan* and therefore concludes that this exception also applies to claims for
breach of implied warranties. Notably, the court in *Morgan* incorrectly cited *Lee* in support of its
holding that the exception is inapplicable to claims for breach of implied warranties. *See* 359 F.
Supp. 3d at 1292.

flier that indicated the CAEv2 was "there to protect you" and was a "useful product"). Accordingly, there is a factual dispute as to whether Defendants made an express warranty to Mr. Estes that would satisfy the privity requirement for his breach of warranty claims. Defendants' motion for summary judgment on Mr. Estes' breach of warranty claims is therefore denied.

*b. Counts VII, VIII, and X — Negligent misrepresentation, fraudulent misrepresentation, and fraud and deceit*

To prevail on his misrepresentation claims and his claim for fraud and deceit, Mr. Estes must show that he reasonably relied on a false representation or omission by the Defendants. *See Moore v. Lovein Funeral Home, Inc.*, No. A20A1632, --- S.E.2d ----, 2020 WL 7488622, at *6 (Ga. Ct. App. Dec. 21, 2020); *Restivo v. Bank of Am. Corp.*, 618 F. App'x 537, 540 (11th Cir. 2015) ("justifiable reliance" required for claim of "common law fraud" under Georgia law); *see also Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1030 (11th Cir. 2003) ("As the Georgia courts have recognized, the reasonable reliance that is required to state a negligent misrepresentation claim is equivalent to that needed in the fraud context."). Defendants argue that Mr. Estes "cannot establish that he relied upon *any* statements or assertions from the Defendants in his decision to wear the CAEv2 earplugs."[10]

---

[10] Mr. Estes' misrepresentation and fraud and deceit claims are based on Defendants' alleged affirmative misrepresentations *and* omissions. *See* Master Long Form Compl., MDL Dkt. No. 704 at ¶¶ 368, 380, 397. Defendants' motion does not address Mr. Estes' omission theories. Accordingly, the Court construes Defendants' motion as seeking partial summary judgment on

But as previously noted, there is ample record evidence from which a reasonable jury could find that Defendants omitted or affirmatively misrepresented information regarding the CAEv2 to both the military[11] and to soldiers like Mr. Estes. *See Fla. Rock & Tank Lines, Inc. v. Moore*, 365 S.E.2d 836, 837 (Ga. 1988) ("[T]he requirement of reliance is satisfied where (as in this case) A, having his objective to defraud C, and knowing that C will rely upon B, fraudulently induces B to act in some manner on which C relies, whereby A's purpose of defrauding C is accomplished."); *cf. Starling v. Seaboard Coast Line R.R. Co.*, 533 F. Supp. 183, 192 (S.D. Ga. 1982) (denying motion to dismiss the plaintiff's fraud claim where the plaintiff alleged he relied on the defendant asbestos manufacturers' "false representations to insulation workers who used asbestos products regarding the dangers of asbestos exposure"). There is therefore a triable issue of fact as to whether Mr. Estes reasonably relied on these omissions or misrepresentations. *Cf. Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002) ("Justifiable reliance generally is a question for the jury . . . ."). Accordingly, Defendants' motion for summary judgment on Mr. Estes' misrepresentation and fraud and deceit claims is denied.

---

Mr. Estes' affirmative representation-based theories. Defendants' motion is denied to the extent it seeks summary judgment on Mr. Estes' omissions-based theories.

[11] *See, e.g.*, Email from Elliott Berger to Brian Myers dated May 12, 2000, MDL Dkt. No. 1072-35 at 2 ("Should I share this Ohlin? It looks like the existing product has problems unless the user instructions are revised?").

### c. Count IX — Fraudulent concealment

Defendants argue that Mr. Estes' claim for fraudulent concealment fails because he cannot establish that Defendants owed him a duty to disclose. The Court disagrees.

"[I]n a fraudulent concealment action, there must first exist a duty to communicate the omitted or concealed material fact to the defrauded party." *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015). "This duty to communicate 'may arise from the confidential relations of the parties or from the particular circumstances of the case.' " *Id.* (quoting O.C.G.A. § 23–2–53). "Georgia courts have held that there are two essential factors necessary for the duty to speak to arise from 'particular circumstances': (1) the intentional concealment of a fact (2) for the purpose of obtaining an advantage or benefit." *Seckinger-Lee Co. v. Allstate Ins. Co.*, 32 F. Supp. 2d 1348, 1356 (N.D. Ga. 1998); *see CAR Transp. Brokerage Co., Inc. v. John Beakley R.V. Ctr., Inc.*, No. 1:06-cv-1728, 2008 WL 11416958, at *5 (N.D. Ga. Sept. 25, 2008). "The particular circumstances of the case may give rise to an obligation to communicate where there is a concealment of 'intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.' " *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1296 (N.D. Ga. 2018) (citation omitted).

The Court finds that there is a triable issue of fact as to whether the "particular circumstances" of this case warrant an imposition of a duty to disclose on Defendants. Based on the record evidence of (1) the intrinsic quality of the alleged defects in the CAEv2 and (2) Defendants' alleged intentional concealment of those defects from members of the military, including Mr. Estes, a reasonable jury could find that Defendants owed Mr. Estes a duty to disclose. *See Amin*, 301 F. Supp. 3d at 1296 (denying motion to dismiss a fraudulent concealment claim because the plaintiffs alleged that the defendants knowingly manufactured and sold automobiles with defective HVAC systems); *cf. In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-md-2495, 2018 WL 2765961, at *10 (N.D. Ga. June 8, 2018) (on summary judgment, finding defendant did not owe plaintiffs a duty to disclose where "the Defendant never engaged in conduct that could be considered *concealment*"); *McCabe*, 160 F. Supp. 3d at 1352 (on summary judgment, finding defendant did not owe a duty to disclose where there was no evidence that the defendant had ever interacted with the plaintiffs). Accordingly, Defendants' motion for summary judgment on Mr. Estes' fraudulent concealment claim is denied.

### d. Count XII — Negligence per se

The Estes allege that Defendants were negligent per se because they violated the Environmental Protection Agency's ("EPA") regulations governing the labeling of hearing protection devices by "misrepresenting the [Noise Reduction Rating]"

and "failing to include proper fitting instructions to achieve the [Noise Reduction Rating]."[12] *See* 40 C.F.R. § 211.201 *et seq.* Defendants argue that Mr. Estes' claim fails as a matter of law because "the EPA regulations on which Plaintiffs rely do not apply to products that, like the CAEv2, were designed for use in combat." In support, Defendants assert that the EPA's authority to regulate hearing protection devices comes from the Noise Control Act ("NCA") and point to a provision of the NCA that exempts "military weapons or equipment which are designed for combat use" from its definition of regulated "products" (the "combat-use exception"). 42 U.S.C. § 4902(3)(B)(i). According to Defendants, the EPA regulations are inapplicable to the CAEv2 because it was "designed for combat use." For the following reasons, the Court disagrees and finds that the combat-use exception does not exempt sound-reducing products like the CAEv2.

The Court must use traditional tools of statutory interpretation to determine whether the combat-use exception removes noise-reducing products like the CAEv2 from the NCA's definition of "product." The Court begins with the text itself,

---

[12] "[N]egligence per se arises when a defendant violates a statute or ordinance, satisfying, as a matter of law, the first two elements of a negligence claim." *Amickv. BM & KM, Inc.*, 275 F.Supp.2d 1378, 1381 (N.D. Ga. 2003); *see McClain v. Mariner Health Care, Inc.*, 631 S.E.2d 435, 411–12 (Ga. Ct. App. 2006) ("The violation of a regulation . . . can likewise establish that a defendant breached a duty owed to a plaintiff as a matter of law."). Violation of a statute, regulation, or ordinance satisfies the duty and breach elements only if (1) the plaintiff falls within the class of persons the law was intended to protect, (2) the plaintiff's injuries are of the type the law was intended to guard against, and (3) the violation of the law proximately caused the plaintiff's injury. *See Amickv*, 275 F.Supp.2d at 1381.

looking "to the entire statutory context" rather than "at one word or term in isolation." *See Ga. State Conf. of the NAACP v. City of LaGrange, Ga.*, 940 F.3d 627, 631 (11th Cir. 2019) (citation omitted). "The canons of construction also serve as interpretive tools to assist us in understanding the broader statutory context." *In re Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018) (citing *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001)).

The NCA authorizes the EPA to regulate "any product . . . which is sold wholly or in part on the basis of its effectiveness in reducing noise." 42 U.S.C. § 4907(a)(2).  Absent the combat-use exception, the CAEv2 would clearly fall within this definition of "product."  *See also Bilsom Int'l, Inc. v. EPA*, No. 90-1109-LFO, 1990 WL 183563, at *1 (D.D.C. Nov. 13, 1990) ("[T]he [EPA] . . . has jurisdiction over the labeling of earplugs under Section 8 of Noise Control Act of 1972."). The combat-use exception exempts "any military weapons or equipment which are designed for combat use" from the definition of "product." 42 U.S.C. § 4902(3)(B)(i). The CAEv2 is obviously not a "military weapon." The issue, therefore, is whether the CAEv2 is "equipment which [is] designed for combat use."

Employing traditional tools of statutory construction, the Court concludes that the CAEv2 is not "equipment" as that term is used in the combat-use exception. "Under the familiar interpretive canon *noscitur a sociis*, 'a word is known by the company it keeps.' " *McDonnell v. United States*, 136 S. Ct. 2355, 1268 (2016)

(citation omitted). "While 'not an inescapable rule, this cannon 'is often wisely applied where a word is capable of many meanings in orders to avoid the giving of unintended breadth to the Acts of Congress.' " *Id.* (citation omitted). Applying *noscitur a sociis* to the combat-use exception, the Court concludes that "equipment" must be similar in nature to "weapons." Because "weapons" like guns or missiles emit rather than reduce noise, "equipment" is subject to the same meaning. Clearly, then, an earplug like the CAEv2 is not the type of "equipment" encompassed by the combat-use exception.

The Court's interpretation of the combat-use exception is further supported by looking to the other types of items exempted from the definition of "product" pursuant to § 4902(3) because each item, like "weapons," emits—rather than reduces—noise. For example, subsection (3)(A) carves out "any aircraft, aircraft engine, propeller, or appliance." Subsections (3)(B)(ii)–(iii) exempt certain types of "rockets or equipment" and "other machinery or equipment." Moreover, none of the exceptions to the definition of "product" enumerates noise-reducing products like the CAEv2. *See Lagos v. United States*, 138 S. Ct. 1684, 1688–89 (2018) ("[W]e find here both the presence of company that suggests limitation and the absence of company that suggests breadth.").[13]

---

[13] Additionally, there is record evidence that the CAEv2 was not designed exclusively "for combat use." *See* Project Summary Sheet, MDL Dkt. No. 1072-14 at 7 (describing CAEv2 as a "[n]onlineaer plug to be sold to the military *and as shooter's plug*" (emphasis added)). Had

In short, the combat-use exception does not apply to the CAEv2 because the exception does not apply to noise-reducing products. Accordingly, Defendants' motion for summary judgment on Mr. Estes' negligence per se claim is denied.

*e. Count XIII — Unfair trade*

Mr. Estes raises a claim under Georgia's Uniform Deceptive Trade Practices Act ("UDTPA"), O.C.G.A. §10-1-370 *et seq.*, and "other consumer protection statutes." *See* Master Long Form Compl., MDL Dkt. No. 704-1 at ¶¶ 440, 443(l), 444. Defendants argue, and Mr. Estes concedes, that Mr. Estes' claim fails to the extent it is based on a violation of the UDTPA because Mr. Estes does not seek injunctive relief for future damages. However, Mr. Estes insists that his claim "remains viable because Defendants did not move for summary judgment on it" to the extent it is based on Georgia's Fair Business Practices Act ("FBPA"), O.C.G.A. §§ 10-1-390 *et seq.* Mr. Estes relies on the allegations in the Master Long Form Complaint generally referencing "consumer fraud and/or unfair and deceptive acts and trade practices in violation of consumer protection statutes" in support of his argument that he has adequately raised a claim under the FBPA. The Court disagrees. The liberality granted to pleadings does not extend *that* far. Mr. Estes may not rely on a broad reference to "consumer protection statutes" as an anchor for raising more

---

Congress meant to exempt products designed *in part* for combat use, it knew how to say so. *See CBS Inc.*, 245 F.3d at 1226 ("[W]here Congress knows how to say something but chooses not to, its silence is controlling." (citation omitted)).

specific, unpled theories from the evidence at summary judgment. *Cf. Dun v. Transamerica Premier Life Ins. Co.*, No. 19-40, 2020 WL 4001472, at *3–4 (D.D.C. July 15, 2020) ("A plaintiff cannot suddenly 'discover' in summary-judgment briefing that a collection of facts pled in a complaint impliedly invokes a previously unmentioned statutory claim — especially when, as here, that Complaint explicitly states numerous other substantive counts.").

Accordingly, Defendants' motion for summary judgment on Mr. Estes' claim for unfair trade is granted.

### F. Count XV — Unjust enrichment

To prevail on his claim for unjust enrichment, Mr. Estes must show that he provided a benefit to Defendants. *See Ridgeline Capital Partners, LLC v. MidCap Fin. Servs., LLC*, 340 F. Supp. 3d 1364, 1372 (N.D. Ga. 2018); *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1362–63 (N.D. Ga. 2018). Defendants argue that Mr. Estes' claim fails because there is no evidence that Mr. Estes provided any benefit to Defendants. Mr. Estes responds that while he "did not buy the CAEv2 from Defendants, . . . he risked his life to defend them" through his military service. Even assuming, without deciding, that Georgia law permits an unjust enrichment claim where the alleged benefit is conferred indirectly on a party,[14] Mr. Estes does

---

[14] "Whether Georgia law permits an unjust enrichment claim where the alleged benefit is conferred indirectly on a party appears to be an open question." *Mullinax v. United Marketing Grp., LLC*, No. 1:10-CV-3585, 2011 WL 4085933, at *14 (N.D. Ga. Sept. 13, 2011) (Carnes, C.J.).

not cite, nor has the Court's independent research revealed, any authority to support the proposition that military service constitutes the type of "benefit" necessary to sustain an unjust enrichment claim under Georgia law. The Court declines Mr. Estes' invitation to expand the scope of unjust enrichment liability to this extent. Accordingly, Defendants' motion for summary judgment on Mr. Estes' unjust enrichment claim is granted.

Accordingly,

1. Defendants' Motion for Summary Judgment, ECF No. 26, is **GRANTED in part** and **DENIED in part**.

2. The motion is **GRANTED** as to Mr. Estes' claims for unfair trade (Count XIII) and unjust enrichment (Count XV).

3. The motion is otherwise **DENIED**.

**DONE AND ORDERED** this 2nd day of February 2021.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**