# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Estes*, 7:20cv137 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## ORDER

This matter is before the Court on Plaintiffs' motion for summary judgment, ECF No. 23. On full consideration, the motion is **GRANTED in part** and **DENIED in part**.

## I. Legal Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex*, 477 U.S. at 323. In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *Liberty Lobby*, 477 U.S. at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).

**II. Background**

The Court assumes the parties' familiarity with the general factual allegations and nature of this multidistrict litigation. Plaintiffs, Luke Estes and his wife, Jennifer Estes, raise sixteen claims under Georgia law[1] against Defendants arising from injuries the Estes allege were caused by Mr. Estes' use of 3M's Combat Arms Earplug ("CAEv2") during his military service. *See* Am. Master Short Form Compl., ECF No. 12-1.[2] Defendants raise several affirmative defenses, including that the actions of a nonparty, the United States, are the actual, contributing, intervening, or superseding cause of the Estes' injuries, *See* ECF No. 14 at pp. 3–9, ¶¶ 4, 14, 16–17.

---

[1] The parties agree that Georgia law governs the Estes' claims.

[2] Specifically, Mr. Estes raises claims for Design Defect – Negligence (Count I), Design Defect – Strict Liability (Count II), Failure to Warn – Negligence (Count III), Failure to Warn – Strict Liability (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count VI), Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), Fraud and Deceit (Count X), Gross Negligence (Count XI), Negligence Per Se (Count XII), Consumer Fraud and/or Unfair Trade (Count XIII), Unjust Enrichment (Count XV), and Punitive Damages (Count XVI). Mrs. Estes raises a claim for Loss of Consortium (Count XIV).

## III. Discussion

The Estes move for summary judgment on Defendants' affirmative defenses relating to the alleged fault of the United States military in causing Mr. Estes' injuries. The Estes argue that the Defendants' apportionment defense fails as a matter of law because Defendants did not provide notice as required under Georgia's apportionment statute. The Estes further argue that the Defendants' affirmative defenses relating to the United States' role in causing Mr. Estes injuries fail as a matter of law for the additional reason that Defendants have not provided sufficient evidence to show that the United States proximately caused any portion of Mr. Estes' injuries. In response, Defendants argue that (1) the requirements imposed by Georgia's apportionment statute conflict with the Federal Rules of Civil Procedure and therefore do not apply in this federal case under the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010); (2) even if Georgia's apportionment statute were applicable, Defendants complied with its requirements; and (3) they have provided sufficient record evidence to raise a triable issue of fact as to their government-fault defenses. For the following reasons, the Court agrees with Defendants and denies the Estes' motion.

First, the Court need not decide whether Georgia's apportionment statute applies in this case because, assuming it does, Defendants complied with its requirements. Under Georgia's apportionment statute, "[n]egligence or fault of a

nonparty shall be considered . . . if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault." O.C.G.A. § 51-12-33(d)(1). The statute requires that the notice "be given by filing a pleading in the action" that "(1) designat[es] the nonparty; (2) "set[s] forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances;" and (3) provides "a brief statement of the basis for believing the nonparty to be at fault." O.C.G.A. § 51-12-33(d)(2). "[T]he plain and unambiguous meaning of [§ 51-12-33(d)(1)'s] text mandates *strict* compliance. Accordingly, failure to give proper timely notice precludes apportionment between a nonparty and a party." *Trabue v. Atlanta Women's Specialists, LLC*, 835 S.E.2d 586, 593 (Ga. Ct. App. 2019), *aff'd sub nom. Atlanta Women's Specialists, LLC v. Trabue*, 850 S.E.2d 748 (Ga. 2020).

Trial in this case is set for March 29, 2021. Therefore, if § 51-12-33(d) applies, Defendants were required to file a proper notice on or before November 29, 2020. The Court finds Defendants gave proper and timely notice. Specifically, on July 13, 2020, Defendants identified the United States as a nonparty at fault in their answer to the Estes' short-form complaint. *See* ECF No. 14 at p. 6, ¶¶ 14, 16 ("The injuries and damages allegedly sustained by Plaintiff may have been caused, in whole or in part, by the negligence acts or omissions of . . . the nonparty the United States."). In their answer, Defendants further stated that they "instructed the United States

military in the proper fitting of the CAEv2," "relied on the United States military to convey those instructions to the users of the CAEv2," and that "[t]he United States military trained users to fit the CAEv2 and created written instructions that advised some users to roll back the opposing flanges to attain the best fit." *Id.* ¶ 15.[3]

Defendants' answer satisfies Georgia's apportionment statute because it is a "pleading" that (1) was filed more than 120 days before trial, (2) designates the United States as the nonparty at fault, (3) sets forth the best identification of the United States "which is possible under the circumstances," *see* O.C.G.A. § 51-12-33(d)(2), and (4) provides a brief statement of the basis for believing the United States to be at fault—that is, that the United States military did not provide appropriate fitting instructions for the CAEv2 to soldiers like Mr. Estes. *See* O.C.G.A. § 51-12-33(d)(2). Accordingly, the Estes' motion for summary judgment on Defendants' apportionment defense is denied on this basis.

Second, the Court finds that Defendants have offered sufficient evidence to create a fact dispute as to whether the United States military proximately caused Mr. Estes' injuries. The Estes argue that Defendants' government-fault affirmative

---

[3] Defendants' February 3, 2020, Amended Answer to Plaintiffs' Master Long Form Complaint also states that "Plaintiffs' alleged injuries may have been caused by the intervening or superseding acts of negligence by . . . the United States" and that Defendants" relied on the United States military to convey these instructions to the users of the [CAEv2]." *See* MDL Dkt. No. 959 at pp. 99–100, ¶¶ 18–19. The amended answer further states "that representatives of the military informed defendants that the military would provide instructions concerning the use of earplugs." *Id.* at p. 36, ¶ 173.

defenses fail because Defendants have failed to offer expert medical testimony establishing a causal link between the United States military's conduct and Mr. Estes' injuries. The Estes further argue that even if expert testimony were not required, Defendants have failed to introduce sufficient non-expert evidence to create a triable issue of fact on proximate causation. It is Defendants' burden to demonstrate proximate cause. *See Suzuki Motor of Am., Inc. v. Johns*, 830 S.E.2d 186, 192 (Ga. Ct. App. 2019), *aff'd*, 850 S.E.2d 59 (Ga. 2020); *Brown v. Tucker*, S.E.2d 810, 820 (Ga. Ct. App. 2016). For the following reasons, the Court finds that the Estes' motion is due to be granted, in part, and denied, in part.

As a preliminary matter, the Court must determine whether Defendants' government-fault defenses involve a "specialized medical question" requiring medical expert testimony. *See Cowart v. Widener*, 697 S.E.2d 77, 786 (Ga. 2010). This inquiry turns on the theory of injury alleged. *See Pierzchala v. Olds*, No. 1:15-CV-260, 2017 WL 3498706, at *7–9 (N.D. Ga. Feb. 14, 2017). Defendants identify three alleged omissions by United States military as potential alternative causes of Mr. Estes' injuries: (1) its failure to ensure Mr. Estes was fit with the CAEv2 by medically trained personnel, (2) its failure to conduct an annual audiogram for Mr. Estes in 2014, and (3) its failure to inform him of the flange-fold fitting technique. The Court finds that Defendants' second theory of injury—that a failure to conduct an audiogram in 2014 contributed to Mr. Estes' injuries—is a medical question about

causation that lay jurors could not answer based on experience and common sense. *See Sanders v. United States*, No. CV 109-164, 2012 WL 12891443, at *4 (S.D. Ga. June 28, 2012) (holding that expert medical testimony was necessary to establish that a nurse's delay in providing treatment worsened a patient's injuries). Defendants do not present expert medical testimony that the military's alleged failure to conduct an audiogram in 2014 contributed in any way to Mr. Estes' injuries. Accordingly, the Estes' motion is granted as to this theory of causation.

Defendants' first and third theories of injury, however, do not present a specialized medical question requiring expert medical testimony. While medical expert testimony is necessary to establish a causal connection between Mr. Estes' injuries and his exposure to noises during his military service, *cf. Mathison v. United States*, 619 F. App'x 691, 694 (10th Cir. 2015) (applying Colorado law, and stating that "identify[ing] the source of [plaintiff's] sensorineural hearing loss [is] a complex medical question outside lay competence"), the record contains sufficient medical expert testimony to support a jury finding that Mr. Estes' military noise exposure caused his hearing injuries. However, the next link in these two theories of causation—that Mr. Estes was exposed to injurious noises because the United States military did not ensure his CAEv2 earplugs were properly fitted or provide him with adequate instruction in proper use of the CAEv2—is not the type of "medical question" that requires medical expert testimony under Georgia law. *Cf. Self v. Exec.*

*Comm. of Ga. Baptist Convention of Ga., Inc.*, 266 S.E.2d 168, 169 (Ga. 1980) (concluding the plaintiffs were not required to introduce expert testimony on causation where a patient died from a subdural hematoma after falling, even though the defendant submitted expert testimony that the hematoma was caused instead by leukemia).

There is sufficient record evidence to create a triable issue of fact on these theories of causation. First, the regulation governing the Army Hearing Program required, among other things, "that medically trained personnel fit individuals with preformed earplugs." *See* Tuten Report at 9 (quoting DA Pamphlet 40-501). Further, based on Mr. Estes' deposition testimony and interrogatory responses, there is evidence that the United States military did not fit Mr. Estes with the CAEv2 or provide him instructions or training in using the CAEv2. *See* Response to Interrogatory No. 28 ("I do not specifically recall being fitted for the CAEv2"); Luke Estes Depo. Tr. at 140:24–141:3 (testifying that he did not "recall" receiving "instructions, training, or familiarity" with the CAEv2), 183:9–11 ("I don't recollect . . . any specific training"), 185:16–25 (testifying that he did not receive written instructions about the CAEv2). Thus, based on the evidence, a lay jury could conclude from common knowledge that Mr. Estes's hearing-related injuries occurred when he was exposed to loud noise due to inadequate fitting of his CAEv2 or instruction on the proper use of his CAEv2. *See Bruce v. Classic Carrier, Inc.*,

No. 1:11-cv-1472, 2014 WL 1230231, at *8 (N.D. Ga. May 24, 2014) (Carnes, C.J.) ("[W]here the symptoms complained of emerge immediately or soon after the event alleged to have caused them, and it is common knowledge that such an event is one that could cause that kind of injury, a reasonable jury could draw conclusions about proximate cause.").

Accordingly,

1. The Estes' motion for summary judgment, ECF No. 23, is **GRANTED in part** and **DENIED in part**.

2. The motion is **GRANTED** as to Defendants' government-fault affirmative defenses to the extent those defenses are based on the United States military's alleged failure to conduct annual audiograms for Mr. Estes.

3. The motion is otherwise **DENIED**.

**DONE AND ORDERED** this 10th day of February 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO. 7:20cv137-MCR-GRJ